are going to now proceed to the court to preside. Mr. Lazarus, will you come up? Take a minute here. Not everybody is seated. You may proceed. May it please the court, Jeff Lazarus on behalf of the appellant Damon Joiner. I would like to reserve three minutes for rebuttal, if I may. You may. Thank you. In this case, Mr. Joiner was initially subject to a statutory mandatory minimum and was able to pierce the mandatory minimum due to his substantial cooperation with the government that resulted in a five-level downward departure under 5K1.1. He now seeks a sentence reduction under 18 U.S.C. 3582, which the district court denied. The seminal issue in this case is whether his applicable guideline range has been lowered. And we rely on three things in support of our position. First and foremost, last month the Third Circuit, in a case United States v. Savani, S-A-V-A-N-I, came out with a decision that supports our position. And that says that when a defendant is initially subject to a mandatory minimum, but their substantial assistance allowed them to pierce the mandatory minimum, they are eligible for a sentence reduction. Did you file a 28J letter on the Savani? I did not. Okay. Can you give us a cite for it then? Yes, Your Honor. I can look it up, but it's not one that we had heard about before, I didn't think. 2013, Westlaw, 246-2941. Okay, so it's really new. It's not even an F-3rd. It's not even an F-3rd. Is it a published decision? It was published. It was filed at the end of May and then refiled at the end of June. I'm not exactly sure why. The opinions are identical. Was it designated for publication the first time as well? I believe so, but I'm not sure. We can look it up. Okay. The basic point is, give me your best shot on why the definition of applicable guideline range as established in the guidelines manual and the amendments and the language isn't the traditional definition. My understanding, and that's why I'm looking for a counter, I understand the instinctive appeal from your side, but my understanding always was when you have a mandatory minimum or a mandatory maximum, then that truncates the quote applicable guideline range. Normally you have a range that you get off the grid, right? Correct. And then if either a minimum or a maximum impacts that, the guidelines manual has always said that either truncates the range or it becomes the range. In other words, if there is a statutory maximum that's below the guideline, then that is the applicable guideline range is the maximum. Same with the minimum. And there's hundreds of cases that say that. So tell me what the Third Circuit said or what you said that changes that. Well, let me begin with this Court's precedent from 2010. Prior to the passage of Amendment 750, in United States v. Hamid, which is a 2010 case that was published, and in United States v. Johnson, a 2009 case that was published, the Court said exactly that. The Court said, we believe that the applicable guideline range is the mandatory minimum. Now in Hamid, the Court recognized that there were conflicting interpretations, that it might be before it's the determination of the criminal history category and defense level before we get to the 5G 1.1 bump up, as we call it in our neck of the woods. Now, when the Sentencing Commission passed Amendment 750, and in Hamid, the Court recognized that there was no definition for applicable guideline range. And this Court created its own definition. And that definition was precedential until the passage of Amendment 750. Amendment 750 then defined applicable guideline range to say the offense level and criminal history category prior to the determination of any guideline departures. And the Third Circuit has interpreted this to mean where we end up in United States Sentencing Guidelines 5A, prior to the sort of bump up to the mandatory minimum. Now... Well, the Amendment 750 says, and see if we're on the same page, applicable guideline range is the range that corresponds to the offense level determined pursuant to 1B.1.1A. Okay, are we on the same page so far? That's where we start, yes. All right. And then 1B.1.1A has a whole set of things, one of which is determined from Parts B through G, and Part G incorporates the statutory minimums. That has the conventional language. And that's exactly where the Third Circuit went in Savani. The Third Circuit said, do we stop after 1B.1.1A.7, or do we continue into 1B.1.1A.8? Now, the Third Circuit said, we see conflicting interpretations as to whether you could use the whole determination of 5A, or whether you could include the 5B through 5G. The Third Circuit said it was ambiguous, that the Sentencing Commission had not clearly delineated a rule or a definition of which to apply, and they found under the Rule of Lenity that the risk of a tie goes to the defendant. All right. So what you're telling me is that the Third Circuit says that under the Rule of Lenity, we don't look at Sub 8, we stop at 7, so we don't get over to Part G. Exactly. Okay. At least I understand it. How did they address the next phrase, which Judge Boggs hadn't gotten to yet, which is determined before consideration of any departure provision in the Guidelines Manual or any other variance? I mean, that seems to say very clearly that you look to see whether the mandatory minimum was the guideline range prior to taking into account, in this case, 5K.1.1. How did they get around that? I look at, or what the case law has led me to, is to look at 5G.1.1 itself. And 5G.1.1 itself, specifically Subsection B, says you compare the applicable guideline range to the statutory mandatory minimum, which means they are two different things. And we don't even get to this departure, because before 5G, we still even look at this pre-5G.1.1 calculation of applicable guideline range, and we compare it to the statutory mandatory minimum. And in doing so... So the IE phrase that I read you is just surplusage? Wrong surplusage? Is it that, apparently? I think that the Third Circuit is on the right track, that there is an ambiguity, that it is not clear that we have conflicting guideline interpretations. And the rule of lenity would then come into play. I don't understand how you distinguish Hamid, given the language that we've been talking about in Amendment 750. Hamid may be wrong. Occasionally happens in the circuit, according to the Supreme Court. But it does seem, from an analytical purpose, it would seem to me that we're bound by Hamid, and that you don't have a very persuasive argument to say that the language the Sentencing Commission used in 750 somehow changes that. I would not say Hamid is wrong. I would say Hamid is old. And even though it's only three years old, it's still been replaced by Amendment 750. Hamid is based on Amendment 706. And Amendment 750 was a substantial, for this issue, determination of the definition, because it finally defined applicable guideline range. And Hamid, this Court recognized that there was no definition by the Sentencing Commission. Have there been any other courts, other than the Third Circuit case that you've read, that have come to the conclusion that you're advancing here? There are two, actually. The first is United States v. Wren, W-R-E-N. It is a Seventh Circuit case. The second is United States v. LaBerse, L-I-B-E-R-S-E, which is an Eleventh Circuit case. And the one thing that LaBerse—I don't even know if I'm— Are either of those cited in your briefs? I believe—no, they were not. Okay. And they're very recent? They are very recent, yes, this year. All right, we can look them up. LaBerse relied on the application notes to 1B1.10, specifically application note 3. And in application note 3, the Sentencing Commission recognized that defendants who cooperate are substantially different than defendants who don't. And it allowed an exception for those who provide substantial assistance. This was all new in Amendment 750. And in doing so, it allowed defendants who had previously cooperated to get further reductions below their amended guideline range. And taking that and applying it to Mr. Joyner's facts, he is able—he has pierced the mandatory minimum. Well, but in those cases, were those cases where there were mandatory minimums that had impacted the guideline range? Yes. And in our brief, the addendum cites seven cases from four different district courts from our district that interpret this to mean that once the guideline—once the mandatory minimum is pierced through cooperation, that a defendant can further pierce the mandatory minimum and continue to go down. Oh, we know that, but that's in the original sentencing. That's not in a 3582. But the cases that I cite are 3582s in our addendum. And these are cases where the mandatory minimum was higher than the otherwise applicable guideline range? Yes. So if a defendant, for example, was subject to a mandatory minimum of 240 months and got 150 due to his cooperation, we cite seven cases in which the defendant was able to further go below. Those are all cited in our brief. But I would like to point out— Mr. Call, all the cases that you attached or the orders that you attached were issued prior to this court's decision in U.S. v. McLean, correct? I cannot say if all of them were. I believe a couple of them were. I know Jermaine Young was the first, and I believe that was issued prior to McLean. But I would like the court to keep in mind that McLean was also based on Amendment 706 and did not implicate the Amendment 750 arguments we are making. I would also like to point out— Let me stop you for a second here, because we got over into 5G-1, and I thought you had—and maybe I misheard it, but I thought you said something about 5G-1 having something that would support you. But 5G-1.1b is exactly the language that says, where the mandatory minimum is greater than the maximum of the range, the statutorily required minimum sentence shall be the guideline sentence. And has that language ever been changed? That language has not, and I do not have the exact language in front of me, but I know that 5G-1.1 compares the applicable guideline range to the mandatory minimum. And to say that the applicable guideline range is always the mandatory minimum would render that phrase useless. Okay, so you're saying if I—because you can't give me the exact subsection. If I go back and read 5G-1.1 in its entirety, I will find something that implies at least that the grid number is the final applicable guideline range, not a presumptive, not a preliminary, not a tentative, but the real applicable guideline range. Is that what you're telling me? I mean, I'll definitely undertake that exercise. I just want to make sure that's what you're telling me. I'm saying the guidelines make a distinction between the mandatory minimum and the applicable guideline range in 5G-1.1. Even though it means—I suppose it may be— are you relying on what I just quoted, where the minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum shall be the guideline sentence. So you're distinguishing guideline sentence from applicable guideline range? That is correct. Okay, we'll look at it. Thank you. Okay, you'll have your remaining time. Good morning. May it please the Court, my name is Matthew Call from the U.S. Attorney's Office from the Northern District of Ohio. I was the prosecutor who handled the case from day one with regard to Mr. Joyner. I have a hard time responding to some of the arguments that Defense Counsel has raised because I haven't had the opportunity to read Savani or Wren. They've never been argued or briefed, and they were not raised in a 28-J letter, so I'm somewhat sandbagged. But ultimately, our position is that Defendant Joyner is not eligible for relief under Section 3582 because his initial sentence was not based on a guideline range that was subsequently lowered by the Sentencing Commission. His sentence was based on a mandatory minimum, that being 240 months. Therefore, it would not be consistent with the applicable guideline policy statements put forward by the Sentencing Commission. Mr. Joyner pled guilty to possessing with intent to distribute around 120 grams of crack cocaine. Given his previous criminal history, that placed him at a mandatory minimum of 240 months, 20 years. Had his sentence been computed purely under 2D of the guidelines, it would have been lower, initially a level 32 at the time his plea agreement was negotiated and entered into. Then subsequently, after amendments were passed, it was lowered to a level 30. Judge Boyko in the district court went through the exercise of calculating that and then noted correctly under Section 5G of the guidelines, he was bound to begin from the mandatory minimum of 240 months. That's consistent with what is stated in the sentencing guidelines. It's consistent with the instructions that this court has given to district courts under the Stewart case stating that the starting point for downward departures is the mandatory minimum. Based on that, his sentence was not based on a guideline range that has been changed by the Sentencing Commission in any way. It's very clear, this court has stated and the Supreme Court has stated, that the Fair Sentencing Act did not apply to defendants who were sentenced prior to the effective date, August 3rd of 2010. This court said it in Carradine, the Supreme Court said it in Dorsey. This court further stated in the Hammett case that the Fair Sentencing Act does not apply in a Section 3582 context to affect the mandatory minimum. In this case, if Damon Joyner's advisory sentencing guidelines were to be recomputed here today, they'd wind up at exactly the same point. No matter what starting number under Section 2D of the guidelines he would be at for the quantity of crack cocaine, after specific offense characteristics, after adjustments, the court would wind up at 5G of the guidelines and his sentencing range would go up to 240 months. From there, that would be the starting point from which 5K cooperation points, acceptance of responsibility would be taken up, and we would wind up right back at the Level 25, Category 5, 100-125 month sentencing range that he was sentenced on in 2007. Based on that, his sentencing range has not changed in any way, shape, or form. That's consistent with what this court did in all the cases involving Amendment 706. McLean, McPherson, Johnson, and Hamid, all of which are cited in our briefs. Additionally, there is one unreported case, the Williams case, which is entirely on point from this court from earlier this year. Late last year, earlier this year, it is cited in our brief. Is that a 706 or a 750 case? That was a 750 case, Your Honor. The Williams court interpreted 750. It was an unreported decision, but we do cite to it in our brief. In Williams, a panel of this court stated that the holdings in Johnson, McPherson, McLean, and Hamid, the same logic that made them apply in the Rule 706 context and applies the same in the 750 context, that a defendant who was sentenced based on a mandatory minimum that was subsequently pierced by the effect of a cooperation agreement is not entitled to a reduction in his sentence under 3582. In Williams, the court said that the foundation of the sentence in that circumstance was the mandatory minimum. And so this is the language at the very end. I guess Judge McKeague and I have been leapfrogging down the page. The very bottom says that none of these are applicable if it does not have the effect of lowering the guideline range because of the operation of another provision, e.g., the statutory mandatory minimum. Correct, Your Honor. So that would, from your point of view, seem to be the final nail that 750 is no different from 706. It would, Your Honor. If it weren't for that, we might have a little more of an argument. Perhaps, although I'm not sure that the Sentencing Commission would have the power or authority to modify a mandatory minimum, but we don't really get to that point. Although, I mean, to be fair to the other side's gut argument is the Sentencing Commission wouldn't be modifying the mandatory minimum. That's already been done by the judge in the 5K1 motion. True. However, it's clearly legitimate to go below the mandatory minimum. We're talking about a kind of a procedural argument, which is to say, can 3582 apply? Because I'm not sure that I don't even know if you're making it, but that if the commission said 3582 can apply where the mandatory minimum has been lowered by a subsequent amendment, it wouldn't be making that amendment, that statutory amendment, retroactive. It would be making a statement about 3582. I think that would also be rewriting a substantial portion of the sentencing law that this court and what's written in 5G of the guidelines. But sometimes the Sentencing Commission does do that, right? But they haven't done it. I'm not sure that they have. I'm just saying I think they probably would have the power to do so, but it doesn't look like they have. Since I don't have to, I won't argue that point with you, Your Honor. It wasn't done in this case, certainly. In this case, the Sentencing Commission made no such pronouncement. This court in Stewart and Hamid has said quite clearly the starting point for departures is the mandatory minimum, and that's what Judge Boyko did in this case. Back to the Williams case, the facts are entirely analogous. Mr. Williams versus Mr. Joyner, I think the difference in the amount of crack possessed was about 15 grams. They faced the same mandatory minimum, 240 months. There was a different criminal history category for Mr. Joyner at five and Mr. Williams, who I think was a two or a three. So he started at a different defense level before his departure. But that being said, the court's panel in Williams said that the 2D1.1 base offense level had no impact on the defendant's sentence, and where a mandatory minimum is greater than the otherwise applicable guideline range, it replaces the guideline range. So in that circumstance, which is exactly the same as what happened with Mr. Joyner, Section 3582 reduction in sentence is not allowed or appropriate because the sentence was not based on a guideline range that has been lowered. For that reason, we believe that Judge Boyko correctly and accurately stated that Mr. Joyner was not entitled to relief under Section 3582, and we would ask this court to affirm his ruling. Thank you, counsel. Mr. Lazarus, you have your three minutes for rebuttal. Thank you, Your Honor. I want the court to keep in mind that Amendment 750 was passed because the disparity in sentencing between crack cocaine and powder cocaine was found to be so disparate that the Sentencing Commission and the Fair Sentencing Act both warranted relief. The government's position, however, to deny Mr. Joyner or cooperators 3582 reductions would have extremely unjust results. To adopt the government's position would prevent any cooperator who had pierced the mandatory minimum before to get any type of a reduction under 3582, whereas people who did not cooperate but were sentenced above the mandatory minimum could receive reductions. This doesn't make sense. At first, it's further ironic that the government's Although when they were sentenced above the minimum under the law, they couldn't go below the minimum this time around. They wouldn't get a second shot at it. That's correct. But a defendant who was sentenced to 262 months could receive nearly a two-year reduction, whereas Mr. Joyner who did cooperate and provided substantial But he's already gotten like 110. What, he got 107, didn't he? So he's way below your But he's gotten nothing for this disparate sentencing practice. But essentially that's really the argument, which is that when Congress and the commission by their grace give out some reduction possibilities, it is whatever they say. It's not unfair any more than any other statute is unfair. Well, I believe it's ironic that the government Well, irony is a different matter. Well, irony to a level Well, but let me ask you, because I raised with your colleague this very last couple of lines of the part of Amendment 750 where it specifically says none of the amendments are applicable if the amendment does not have the effect of lowering the guideline range because of the operation of another guideline provision, a mandatory minimum. So there they absolutely contemplated it. I was giving you a little shrift that there might be a difference between applicable guideline range and guideline sentence. But here the commission is clearly in so many words saying it doesn't apply when the guideline range is not lowered because of the mandatory minimum. And that's correct. I believe you're reading Application Note 1A. Correct. Which deals with mandatory minimums but doesn't mention anything about substantial assistance or cooperation. If we go to Application Note 3 Well, but then doesn't that go right to what Judge McKeague was emphasizing was before consideration of any departure or any variance, which is what 5K1.1 is about, isn't it? That is one type of departure, yes. There are, I think, 23 others. But if you go further down, Application Note 3 deals specifically with the exception for substantial assistance. And the Sentencing Commission then adds to it and says, and I quote, that the reduction comparably less than the amended guideline range may be appropriate. If reading Application Note 3, it is a fair reading of that Application Note to mean that a defendant who has pierced the mandatory minimum So you're saying if we look at Note 3, we should read it as vitiating Note 1 even though it doesn't say so. I believe it clarifies Application Note 1 for people who cooperated, which is not addressed by Application Note 1. Thank you, counsel. Your time has expired. That case will be submitted. The clerk may call the next case.